IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

FILED

JAN - 6 2005

TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

WENDELL K. ASH,  )
    Petitioner,  )
                    )
v.  )       Civil Action No. 5:04-0075
                    )
THOMAS MCBRIDE, Warden, *et al.*,  )
    Defendants.  )

## PROPOSED FINDINGS AND RECOMMENDATION

On January 28, 2004, Plaintiff, an inmate at the Mount Olive Correctional Complex [MOCC], and acting *pro se*, filed his Complaint in this matter claiming entitlement to relief pursuant to 42 U.S.C. § 1983.[1] (Document No. 1.) Essentially, Plaintiff alleges that the Defendants failed to provide adequate security, supervision, and medical care in violation of the Eighth Amendment. By Standing Order filed on January 29, 2004, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 2.)

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the Complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct.

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). Upon consideration of Plaintiff's Complaint, it is clear that this action is frivolous. Accordingly, Plaintiff's Complaint should be summarily dismissed.

## PROCEDURE AND FACTS

Plaintiff alleges that on November 7, 2003, as he was leaving the State Shop Sub-Station located in the MOCC gymnasium, he was attacked by another inmate. (Document No. 1, p. 7.) The inmate who attacked Plaintiff, Inmate Heard, and Defendant Peggy Giacomo, Storekeeper 2, were present at the Shop when Plaintiff visited the store. (Id.) He states that Defendant Peggy Giacomo witnessed Inmate Heard threatening Plaintiff, but said nothing and did nothing to stop him from leaving his assigned work area, shortly before Plaintiff completed his purchase. (Id.) After exiting the Shop, Plaintiff was attacked by Inmate Heard who had been waiting for him outside the gymnasium door. (Id.) Plaintiff received a cut to his face above his left eye which was stitched by Defendant Larry Williamson, M.D. (Id., p. 8.) After applying the sutures, Plaintiff states that Defendant Dr. Williamson advised him that his eye was swollen and that if it continued to swell, the stitches may need readjusted. (Id.) Following his medical examination, Plaintiff was charged with fighting in violation of MOCC Disciplinary Rule 2.08 and placed in Detention, Quilliams II, where he was confined pending the investigation of the incident.[2] (Id., pp. 8-9 and Exhibit C.)

---

[2] The details of the underlying charge are described in the Violation Report as follows:

I Recreation Specialist Clinton Ryan on 07 November 2003 at approximately 1410 hours was sitting post outside the recreation office when I saw a verbal argument between Kenneth Heard # 17256 and Wendell Ash # 18784 take place at the gymnasium State Shop. The two inmates were in each others face when I heard Inmate Heard say "I'll meet you outside." Inmate Heard left the gymnasium and

2

During the night of November 7, 2003, Plaintiff's eye swelled shut and he experienced "extensive pain behind [his] eyeball." (Id., p. 10.) He requested pain medication from a nurse distributing medication who informed Plaintiff that he would contact Defendant Dr. Williamson. (Id.) The nurse later advised Plaintiff that he had attempted to telephone Dr. Williamson at home and left a written message for him upon his return to the MOCC the next day. (Id.) Five days later, Plaintiff had received no response from Defendant Dr. Williamson or any other medical personnel to his complaints and he continued to experience pain in his eye. (Id.) He again advised the nurse of his pain and dissatisfaction with Defendant Dr. Williamson's lack of response. (Id.) During the night of November 14, 2003, Plaintiff experienced a nosebleed which through the early morning hours. (Id., p. 11.) He communicated his medical condition to a nurse who responded that "he would inform the day shift, medical crew." (Id.) No one however, examined Plaintiff or otherwise responded to his medical complaints. (Id.)

On November 18, 2003, Plaintiff appeared before Institutional Magistrate William Kerns for a hearing upon the charge of fighting. (Id., p. 11.) The charge against Plaintiff was dismissed by

---

> exited out the double doors beside Correctional Program Supervisor's Valerie [ ] office. Inmate Ash was still at the State Shop for supplies. When I/M Ash left the State Shop he exited through the same double doors as mentioned above. I/M Ash turned right walking towards the breezeway when I seen Inmate Heard throw a punch towards Inmate Ash. I did not see the punch physically hit Inmate Ash. After the punch was thrown a crowd of inmates went out the double doors. I/M Heard came back in the gym and into the State Shop he then exited the building again. I called Central Control to let Shift Commander Lt. Pettey know what I have witnessed. He advised me to write an Incident Report of what I have saw and to tell State Shop Worker Peggy Giacomo to do the same. She advised me that she did not hear nothing.

(Document No. 1, Exhibit G..)

Magistrate Kerns "due to lack of evidence that the defendant participated in a fight."[3] (Document No. 13, Exhibit 1, Hearing Report, 5:04-0069.) Plaintiff was returned to the general prison population on November 24, 2003. (Document No. 1, p. 13.)

Plaintiff filed his Complaint in this matter on January 28, 2004, naming as Defendants the following individuals employed at MOCC on November 7, 2003: Thomas McBride, Warden; Peggy Giacomo, Storekeeper 2; Clinton Ryan, Recreation Specialist; Lt. Lawrence E. Pettey, Correctional Officer; Lt. Perry, Correctional Officer; Larry Williamson, M.D.; and John and Jane Doe, all in their individual and official capacities. (Document No. 1.) Plaintiff first complains that Defendant Peggy Giacomo failed to take appropriate measures to prevent Inmate Heard from assaulting him. (Id., p. 4.) He further complains that she provided false statements in her report of the incident concerning Plaintiff's assault by Inmate Heard. (Id., p. 14.) Second, he alleges that Defendant Warden Thomas McBride failed to provide adequate security in the recreation building and on the recreation yard in breach of his duty to "provide a safe and secure envi[ron]ment for which the Plaintiff to live." (Id., pp. 4, 14.) Third, Plaintiff alleges that Defendant Dr. Williamson failed "to provide appropriate follow up medical care" for his injuries sustained from the assault. (Id.) Finally, he contends that Defendants Lt. Pettey and Lt. Perry failed to supervise the inmate recreation areas. (Id.) Although he does not state a specific claim against Defendant Clinton Ryan, he requests damages from him for his "part in the pain and suffering of the Plaintiff." (Id., p. 14.) Plaintiff further seeks

---

[3] During the hearing, Plaintiff requested that another inmate testify on his behalf. (Document No. 13, Exhibit 1, Hearing. Report, 5:04-0069.) His request was denied however, due to security concerns. (Id.) Nevertheless, Magistrate Kerns gave Plaintiff the opportunity to proffer a summary of the inmate's testimony, but Plaintiff declined. (Id.) Magistrate Kern's decision was based upon the written reports and the testimony of Reporting staff Recreation Specialist Clinton Ryan, Peggy Giacomo, and Defendant. (Id.)

4

compensatory and punitive damages and injunctive relief. (Id., p. 14.)

## ANALYSIS

The Prison Litigation Reform Act [PLRA], 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies with respect to claims of prison conditions, prior to filing civil actions under 42 U.S.C. § 1983 "or any other Federal law," though the administrative process may not afford them the relief they might obtain through civil proceedings.[4] See Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820, 149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 984, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.). The PLRA exhaustion requirement applies with equal force to § 1983 and Bivens actions. See Yousef v. Reno, 254 F.3d 1214, 1218 (10th Cir. 2001)(PLRA's exhaustion requirement applies to Bivens claims); Nyhuis v. Reno, 204 F.3d 65, 68-69 (3d Cir. 2000)(1997e(a) applies equally to § 1983 and Bivens actions).

Section 1997e(a) suggests that exhaustion of administrative remedies is a prerequisite to the Court's jurisdiction, but Circuit Courts have held that administrative exhaustion is not a jurisdictional requirement. See Perez v. Wisconsin Dept. of Corr., 182 F.3d 532, 536-37 (7th Cir.

---

[4] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

5

1999); Underwood v. Wilson, 151 F.3d 292, 294 (5th Cir. 1998), *cert. denied*, 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999); Wright v. Morris, 111 F.3d 414, 421(6th Cir.), *cert. denied*, 522 U.S. 906, 118 S.Ct. 263, 139 L.Ed.2d 190 (1997); Nyhuis v. Reno, 204 F.3d at 69, n. 4. At least one District Court in the Fourth Circuit has followed suit. Citing Underwood v. Wilson, Judge Kiser noted in Johnson v. True, 125 F.Supp.2d 186, 188 (W.D.Va. 2000), that "§ 1997e(a) has not been found by the courts of this circuit to impose exhaustion of administrative remedies as a prerequisite to jurisdiction. Thus, the fact that there are claims within the complaint that may have been exhausted does not deprive this court of subject matter jurisdiction to rule on such claims."

The majority of the Circuits have held in the context of inmates' suits under § 1983 that the failure to exhaust administrative remedies is an affirmative defense under Rule 8(c)[5] of the Federal Rules of Civil Procedure like the defense of statute of limitations. Jackson v. District of Columbia, 254 F.3d 262, 267 (D.C. Cir. 2001); Casanova v. Dubois, 304 F.3d 75, 77, fn. 3 (1st Cir. 2002); Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1999); Jenkins v. Haubert 179 F.3d 19 (2d Cir. 1999); Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002); Wendell v. Asher, 162 F.3d 887, 890 (5th Cir. 1998)(in dicta); Massey v. Wheeler, 221 F.3d 1030, 1034 (7th Cir. 2000); Massey v. Helman, 196 F.3d 727, 734-35 (7th Cir. 1999), *cert. denied*, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); Perez v. Wisconsin Dept. of Corr., 182 F.3d at 536; Foulk v. Charrier, 262 F.3d 687, 697

---

[5] Listing certain traditionally recognized defenses, Rule 8(c) of the Federal Rules of Civil Procedure provides as follows:

**Affirmative Defenses.** In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver and any other matter constituting an avoidance or affirmative defense.

(8th Cir. 2001); cf. Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir 2000), *cert. denied*, 531 U.S. 1040, 121 S.Ct. 634, 148 L.Ed.2d 542 (2000)(An inmate must "plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome.") Likewise, with respect to Bivens actions, the Seventh Circuit Court of Appeals held in Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004), that "[a]lthough exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted).

It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal for want of subject matter jurisdiction. See Neal v. Goord, 267 F.3d 116, 121-122 (2d Cir. 2001)(*overruled on other grounds*), a § 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal,

> allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, . . . if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset.

Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court.

7

Furthermore, available administrative remedies must be exhausted with respect to each claim against each Defendant or the Complaint must be dismissed under the "total exhaustion rule" found in § 1997e(a). See Quinones v. Rubenstein, Civil Action No. 5:02-1365 (S.D. W.Va. Sept. 23, 2003)(C.J. Faber)(Applying a plain meaning reading to the phrase "no action" as stated in § 1997e(a), the District Court concluded that no action shall be brought barring total exhaustion of each and every claim)(*citing* Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000); Givens v. City and County of San Francisco, 2002 WL 31478180, *2 (N.D. Cal. Nov. 5, 2002); Saunders v. Goord, 2002 WL 1751341, *3 (S.D. N.Y. Jul. 29, 2002)). In Quinones, Chief Judge Faber adopted the total exhaustion rule as applied to *habeas* actions filed pursuant to 28 U.S.C. § 2254, and applied it to §1983 and other similar actions. (Id., p. 21.) (Id., p. 20.) The Court concluded that the total exhaustion rule "does not detrimentally affect plaintiff's available remedies . . .[r]ather dismissing the present [unexhausted] claims improves judicial economy by encouraging the plaintiff to reshape his complaint to include only cognizable claims." (Id., p. 22.)

Though administrative exhaustion is not a prerequisite to the Court's jurisdiction and must be pled and proven as an affirmative defense in an indigent inmate's suit under § 1983 or Bivens, nevertheless it appears that a District Court can dismiss a complaint as frivolous under 28 U.S.C. § 1915(d) when the Court finds on its face that the inmate plaintiff has not exhausted administrative remedies. In Nasim v. Warden, Maryland House of Correction, 64 F.3d 951, 954-55 (4th Cir. 1995), *cert. denied*, 516 U.S. 1177, 116 S.Ct. 1273, 134 L.Ed.2d 219 (1996), the Court affirmed the dismissal of the § 1983 suit of an inmate proceeding *pro se* and *in forma pauperis* as frivolous under § 1915(d) because it was clear on the face of the complaint that the action was barred by the applicable statute of limitations. Citing Denton v. Hernandez, 504 U.S. 25, 32-33, 112 S.Ct. 1728,

8

1733-34, 118 L.Ed.2d 340 (1992), the Court stated in Nasim, 64 F.3d, at 954, that "[w]hile that authority [under § 1915(d)] does not authorize the district court to engage in factfinding to resolve disputed facts, it does permit the court to apply common sense, reject the fantastic, and rebut alleged matters with judicially noticeable facts."

Essentially, Plaintiff is alleging that the Defendants failed to provide adequate security, staff supervision, and adequate medical care, all in violation of the Eighth Amendment. These Eighth Amendment claims constitute challenges to Plaintiff's conditions of his confinement which must be administratively exhausted prior to seeking judicial review. See Wilson v. Seiter, 501 U.S. 294, 300, n. 1, 111 S.Ct. 2321, 2325, n. 1, 115 L.Ed.2d 271 (1991)("[I]f an individual prisoner is deprived of needed medical treatment, that is a condition of *his* confinement, whether or not the deprivation is inflicted upon everyone else."); Johnson v. Garraghty, 57 F.Supp.2d 321, 326 (E.D. Va. 1999)(Stating that the medical care an inmate receives is a condition of an inmate's confinement.); Davis v. Reilly, 324 F.Supp.2d 361, 365 (E.D. N.Y. 2004)(Finding that claims of deliberate indifference to inmates' medical care in violation of the Eighth Amendment fall within the meaning of the PLRA exhaustion requirement.). To exhaust properly available administrative remedies, "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted). The West Virginia Division of Corrections' Policy Directive 335.00 establishes procedures whereby state inmates may seek review of complaints which relate to any aspect of their imprisonment, other than appeals of disciplinary and confinement matters. (Document No. 13, Exhibit 2, 5:04-0069.) Within 15 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must submit a G-1 Grievance Form to the Unit Manager. (Id., pp. 4-5.) The Unit Manager must

9

respond to the inmate's Grievance within five business days. (Id., p. 5.) If the Unit Manager's response was unfavorable, the inmate may appeal within five working days to the Warden/Administrator by filing a G-2 Grievance Form. (Id., p. 6.)The Warden/Administrator must respond to the appeal, in writing, within five working days. (Id.) If the Warden/Administrator, in his/her discretion, determines that an investigation is warranted, a final response shall be made to the inmate within 30 working days. (Id.) If the Warden/Administrator's response was unfavorable, the inmate may appeal within five working days to the Commissioner/designee of the Division of Corrections. The Commissioner must respond to the appeal within ten working days. (Id., pp. 6-7.) The administrative process is exhausted when the Commissioner responds to the inmate's final appeal. (Id., p. 7.)

It is significant to note here that on January 27, 2004, Plaintiff filed another § 1983 Complaint that is virtually identical to his instant Complaint.[6] See Ash v. McBride, 5:04-0069 (S.D. W.Va.) The undersigned has this day entered separate Proposed Findings and Recommendation that the District Court dismiss Plaintiff's Complaint in Civil Action No. 5:04-0069, pursuant to the Defendants' Motions to Dismiss for his failure to exhaust administrative remedies. Id. Because Plaintiff's instant allegations are identical to those in Civil Action 5:04-0069, the undersigned incorporates by reference the documents filed therein pertaining to the issue of exhaustion. Accordingly, upon reading Plaintiff's Complaint together with the documents filed in Civil Action

---

[6] Plaintiff's Complaint filed in this civil action is identical to the Complaint filed in Civil Action No. 5:04-0069, with the following exceptions. First, Plaintiff inserts an Exhibit on page 19 of his instant Complaint that is nonexistent in Civil Action No. 5:04-0069. Second, pages 70 through 72, representing Exhibits Q-1, Q-2, and R, in Civil Action No. 5:04-0069, are not included in the instant Complaint. Thus, his Complaint in the present civil action is two pages less in length than the Complaint filed in Civil Action No. 5:04-0069. The instant Complaint otherwise appears to be identical to that filed in Civil Action No. 5:04-0069.

No. 5:04-0069, it is clear that he failed to exhaust completely his administrative remedies respecting his Eighth Amendment claims.

The record reveals that Plaintiff mistakenly believed that challenges to issues of medical care are exhausted after submitting a grievance to the Medical Department Administrator, which Plaintiff did. As already discussed, challenges to issues of medical care constitute challenges to the inmate's conditions of confinement, which must be administratively exhausted under the PLRA.[7] Drawing all inferences in the light most favorable to Plaintiff it is undeniable that Plaintiff may have required immediate medical assistance throughout the night on November 7, 2003. Nevertheless, to obtain judicial review of medical care claims, Plaintiff was required to submit his complaints through the entire administrative remedy process. Plaintiff began the administrative review process by submitting his grievance to the Medical Administrator, but then abandoned the process prior to completion.

Likewise, the undersigned finds that Plaintiff has not completely exhausted his administrative remedies with respect to his claims that the Defendants failed to provide adequate security and supervision. Plaintiff submitted G-1 Grievance Forms to Michael Coleman and his Unit Manager, complaining that Defendant Peggy Giacomo did nothing to prevent the assault by Inmate Heard and that Inmate Heard was not punished for his misconduct. He further submitted a G-2 Grievance Form which was rejected by Defendant Warden McBride because Plaintiff's complaints concerned his

---

[7] It is significant to note here that although Plaintiff alleges that he did not pursue the administrative remedy process because he required immediate medical attention, he could have completely exhausted his claims during the time from when he was allegedly denied medical care until he filed his Complaint on January 28, 2004. More importantly, he is not asking the Court to order that he receive certain medical treatment. Rather he is seeking compensatory and punitive damages for the alleged constitutional violations. If immediate medical attention was required in November, 2003, Plaintiff could have requested immediate injunctive relief from this Court and his administrative remedies would most likely have been deemed exhausted for purposes of the requested relief.

11

disciplinary actions. He then appealed the Warden's decision to the Commissioner, but addressed in his appeal only the issue that Inmate Heard was not punished for attacking him. His appeal was denied as procedurally barred. Assuming that Plaintiff's claims were not procedurally barred at the administrative level, it is clear that the grievances addressed only Defendant Peggy Giacomo's actions, which were not presented at each level of administrative review, and the issue that Inmate Heard was not punished. Plaintiff did not separately allege in his administrative grievances at the appropriate stages that the remaining Defendants violated his Eighth Amendment rights. In view of these circumstances, the undersigned finds that Plaintiff did not exhaust his administrative remedies with respect to any of his claims and therefore, his Complaint must be dismissed for failure to exhaust under § 1997e(a).

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DISMISS** this case without prejudice and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Chief United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Plaintiff.

ENTER: January 6, 2005.

R. Clarke VanDervort
United States Magistrate Judge